NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 07-1966/2653
_____

IN THE MATTER OF THE COMPLAINT OF J.A.R. BARGE LINES L.P.,
As Owner; MON RIVER TOWING, INC., As Owner Pro Hac Vice
of the M/V Rose G., for Exoneration from and/or Limitation of Liability

J.A.R. Barge Lines, L.P.; Mon River Towing, Inc.;
J.A.R. Barge Lines, LLC; Sylvan Investments, Inc.,
Appellants in 07-1966

Ingram Barge Co.,
Appellant in 07-2653
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Nos. 03-cv-00163, 03-cv-00180, 04-cv-00753,
04-cv-01611 (Consolidated at 03-cv-00163))
District Judge: Arthur J. Schwab
_____

Argued March 11, 2010

Before: BARRY, JORDAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed April 6, 2010)
_____

Frederick B. Goldsmith   [ARGUED]
Goldsmith & Ogrodowski, LLC
247 Fort Pitt Blvd. - 4th Fl.
Pittsburgh, PA   15222
        *Counsel for Appellants/Cross-Appellees*


Leonard Fornella   [ARGUED]

Christopher M. Buell
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center - 8th Fl.
Pittsburgh, PA   15222
        Counsel for Appellee/Cross-Appellant

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Mon River Towing, Inc., J.A.R. Barge Lines, L.P., J.A.R. Barge Lines, L.L.C. and Sylvan Investments, Inc. (collectively "appellants") appeal from a judgment entered against them by the United States District Court for the Western District of Pennsylvania, requiring them to pay $296,108.83 in attorneys' fees to Ingram Barge Co. ("Ingram"). For the following reasons, we will affirm, with one minor exception as discussed below.

## I.      Background

As the facts are well known to the parties, we do not repeat them here.  The only issue on appeal is whether the District Court correctly found, pursuant to *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124 (1956), that appellants were required to indemnify Ingram for the attorneys' fees it incurred while defending against a lawsuit brought by appellants' seaman, who was injured while towing one of Ingram's barges.  The *Ryan* doctrine, as it has come to be called, allows a shipowner to recover indemnity from a marine contractor when the shipowner has ceded control of the ship to the contractor for the performance of certain services and the contractor's

2

improper performance of those services exposes the shipowner to an unseaworthiness claim.[1] *See Burris v. Global Bulk Carriers, Inc.*, 505 F.2d 1173, 1174-75 (3d Cir. 1974) ("The *Ryan* decision was an effort to alleviate the shipowner's absolute liability under the unseaworthiness doctrine in situations where the shipowner has relinquished control of some operations on the vessel to the stevedore." (citations omitted)).  Although *Ryan* was decided in the context of an injured longshoreman who was covered by the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA"), which requires an employer to compensate his employee's injury pursuant to a schedule of compensation,[2] it was thereafter extended by some courts to cases involving injuries to Jones Act seamen, who are not covered by the LHWCA.[3]  *See Dunbar v. Henry DuBois'*

---

[1]A ship is unseaworthy if it or its appurtenances are not "reasonably fit for their intended use."  *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960).  A shipowner is subject to strict liability if it fails to provide a seaworthy ship.  *Id.*

[2]Specifically, in *Ryan*, a shipowner had hired a stevedoring company for all of its stevedoring operations.  350 U.S. at 126.  One of the stevedore's longshoremen improperly stowed some cargo on a ship in South Carolina such that, when the ship arrived a few days later in New York, another longshoreman was injured by the cargo during the unloading of the ship.  *Id.*  The Supreme Court allowed the shipowner to recover indemnity from the stevedore on the theory that the parties' contract contained an implied warranty of workmanlike performance that was breached when the cargo was stowed unsafely.  *Id.* at 133-34.

[3]The Jones Act allows a seaman to sue his employer for negligence.  46 U.S.C. § 30104.  In order to qualify as a seaman, an individual must establish that he had an "employment-related connection to a vessel in navigation," which requires that the employee's duties "contribute to the function of the vessel or to the accomplishment of its mission," and that connection must be "substantial in terms of both its duration and its nature."  *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995) (quotations and alteration omitted).

*Sons Co.*, 275 F.2d 304, 305-07 (2d Cir. 1960); *see also McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 (1991) (noting that "the Jones Act and the LHWCA are mutually exclusive"). In 1972, amendments to the LHWCA abrogated *Ryan* in its original context such that it no longer applies to longshoremen covered by the LHWCA. H.R. Rep. No. 92-1441, at 4701-04 (1972); *see also Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 262 (1979).

## II.    Discussion[4]

Appellants' primary argument on appeal is that *Ryan* is an outdated relic of admiralty law that we should put to rest, in light of the 1972 amendments to the LWHCA and the fact that other circuits have retreated from or criticized it. *See, e.g.*, *Lubrano v. Waterman S.S. Co.*, 175 F.3d 274, 276 (2d Cir. 1999) ("*Ryan* indemnity is virtually dead, at least in [the Second] Circuit." ). That argument is easily, if not entirely comfortably, disposed of. Long after the 1972 amendments, we applied *Ryan* in a case concerning injuries to a seaman, making clear that *Ryan* is still binding within this Circuit in the seaman context. *See Cooper v. Loper*, 923 F.2d 1045, 1050-51 (3d Cir. 1991); *see also Purnell v. Norned Shipping B.V.*, 801 F.2d 152, 154 n.1 (3d Cir. 1986) ("[T]he 1972 amendments do not limit *Ryan's* applicability to employees ... who are not covered by [the LHWCA]."). We are obligated to follow our own precedent and are duty bound to apply *Ryan* here. We conclude that the District Court, in its thorough and thoughtful

---

[4]The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1333. We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

opinions, correctly applied the doctrine to the facts of this case and we will therefore affirm its judgment in that regard.[5]

In so holding, we recognize that the *Ryan* doctrine is a "rough all-or-nothing device," *Cooper*, 923 F.2d at 1051 (quoting *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 302 (5th Cir. 1973)), that often yields inequitable results, *see Smith & Kelly Co. v. S/S Concordia TADJ*, 718 F.2d 1022, 1029 (11th Cir. 1983) ("*Ryan*-like indemnity creates great potential for injustice."); *cf. Bosnor, S.A. de C.V. v. Tug L.A. Barrios*, 796 F.2d 776, 786 (5th Cir. 1986) (noting, in a property damage case, that "[u]nderlying policy considerations of uniformity and fairness ... support application of comparative fault principles rather than the all or nothing approach of *Ryan*").  Indeed, the Supreme Court has retreated from similarly blunt rules in the tort context.  For example, in *United States v. Reliable Transfer Co.*, the Supreme Court abrogated the divided damages rule, which required ships involved in a collision to bear equal portions of the resulting damage, in favor of a more equitable rule allocating liability based upon fault.  421 U.S. 397, 398, 411 (1975).  In doing so, the Court observed that:

---

[5]We are unpersuaded by appellants' argument that the Supreme Court's decision in *Stevens v. The White City*, 285 U.S. 195 (1932), precludes application of *Ryan* in the towing context.  We also reject appellants' argument that Ingram is not entitled to indemnity simply because it successfully defended the unseaworthiness claims asserted against it.  *See Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 674 (3d Cir. 1964) ("If conduct of [the contractor] in violation of its warranty to [the shipowner] was the sole responsible cause of [the employee's] injury ... the expense to which [the shipowner] is subjected in defending [the employee's] suit against it to recover for that injury is an element of damage caused by the [contractor's] breach of warranty, even if [the shipowner] succeeds in defeating [the employee's] claim.").

> The rule of divided damages in admiralty has continued to prevail in this country by sheer inertia rather than by reason of any intrinsic merit. The reasons that originally led to the Court's adoption of the rule have long since disappeared. The rule has been repeatedly criticized by experienced federal judges who have correctly pointed out that the result it works has too often been precisely the opposite of what the Court sought to achieve in [establishing the rule] – the 'just and equitable' allocation of damages.

421 U.S. at 410-11. The same kind of comment could be made about the *Ryan* doctrine. It has been abrogated in its original context and the Supreme Court has permitted joint tortfeasors to seek contribution in maritime personal injury actions under most circumstances, *see Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 109-10 (1974), yet the doctrine lives on. It may very well be that *Ryan* indemnity has outlived its usefulness, but, since we are not sitting *en banc*, we have no authority to decline its application in the present context. Furthermore, the Supreme Court has not overruled *Ryan* in its entirety, despite the 1972 amendments to the LWHCA. Unless and until that happens, it appears that the doctrine will linger on, regardless of heavy criticism.

We will therefore affirm the District Court's application of *Ryan*. However, since appellants concede that, if *Ryan* applies, Ingram is entitled to recover the $4,063.07 that it incurred defending itself in a related action in the United States District Court for the Southern District of Ohio,[6] we will vacate the District Court's ruling precluding Ingram

---

[6]Specifically, appellants state: "As for Ingram's appeal for another $4,063.07, [appellants] oppose[] it only to the extent it is based on the *Ryan* doctrine, and do[] not otherwise challenge Ingram's cross-appeal." (Appellants' Fourth-Step Br. at 31.)

from recovering that sum, and remand with instructions to the District Court to amend its judgment accordingly.